UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUGLAS EDWARD GALLAGHER, ) | |
| ) | |
| Plaintiff, ) | CASE NO: C07-127-JCC-MJB |
| ) | |
| v. ) | |
| ) | |
| BETTE PINE, et al., ) | REPORT AND RECOMMENDATION |
| ) | |
| Defendants. ) | |
| _____ ) | |

### I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Douglas Edward Gallagher brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants' denial, delay, and deliberate indifference to his medical needs violated his rights under the Eighth and Fourteenth Amendments. He names the following as defendants in this action: (1) Bette Pine, Jail Health Administrator at the King County Correctional Facility ("KCCF"), and (2) Richard Chang, DDS, a dentist on the Jail Health staff at KCCF. Plaintiff seeks compensatory and punitive damages, costs, and any additional relief that this court deems just, proper and equitable.

Defendants have filed a motion for summary judgment, along with supporting declarations and exhibits, seeking dismissal of Plaintiff's case with prejudice. (Dkt. #13). Plaintiff filed a response in opposition to Defendants' motion (Dkt. #17) and Defendants filed a reply (Dkt. #18). Having considered the motion and responses, and the balance of the record,

REPORT AND RECOMMENDATION
Page - 1

the undersigned recommends that Defendants' motion for summary judgment be GRANTED and Plaintiff's action be dismissed with prejudice.

## II. FACTUAL BACKGROUND

The conduct that forms the basis of Plaintiff's complaint against the defendants occurred while he was a pretrial detainee at the KCCF. He was incarcerated at the KCCF from March 7, 2004 to May 25, 2007. (Dkt. #13 at 2). The following facts are undisputed.[1]

On April 8, 2004,[2] Plaintiff submitted a Jail Health Services Health Request (a "Kite") regarding a dental problem to Jail Health Services ("JHS"). (*See* Dkt. #1, Pl.'s Compl. 4; Dkt. #13, Defs.' Summ. J. Mot. 2.) Plaintiff's kite stated:

> On 3-6-04 the SPD took and kept my upper plate at the North Precinct. I am having a hard time eating and my gums and the roof of my mouth have been sore/cut/bleeding – I only have 6 upper teeth – I need help – I will be here at least a year.

(Dkt. #14, Chang Decl., Ex. 1.)[3] On April 13, 2004, Plaintiff was seen by JHS dentist Dr. Richard Chang, who performed a dental examination. (Dkt. #1 at 4; Dkt. #14 at 2:9-10.) Plaintiff explained that he was having trouble eating, at times his gums would get sore and bleed, he could not eat fruit because he had no front teeth, and he needed an upper partial dental plate made to relieve the problem. (Dkt. #1 at 4; *see also* Dkt. #14 at 2:10-11) Dr. Chang diagnosed

---

[1] When the parties cite differing dates for a particular event, this Report and Recommendation uses the date from the copies of supporting documents submitted as exhibits to the parties' pleadings.

[2] Plaintiff's complaint identifies the date as April 1, 2004, (Dkt. #1 at 2); however a copy of the kite shows the date as April 8, 2004. (Dkt. #14, Ex. 1).

[3] Plaintiff alleges in his complaint that on March 6, 2004, during his arrest by Seattle Police, his upper partial bridge came out of his mouth and was recovered by the police officers. (Dkt. #1 at 4). Plaintiff states that he was told he would get his teeth back when he got to jail, but he never saw the partial bridge again. *Id.* Plaintiff had a total of thirteen (13) teeth in his mouth – six (6) upper and seven (7) lower. *Id.*

REPORT AND RECOMMENDATION
Page - 2

Plaintiff with severe localized periodontitis (disease that results in inflammation and potential tooth/tissue decay) and advised him that tooth #3 would need to be extracted. (Dkt. #14 at 2:12-15 and Ex. 2, Dental Progress Notes.) Dr. Chang also informed Plaintiff that the jail's dental clinic does not routinely fabricate prostheses (dentures). (Dkt. #14 at 2:14-15 and Ex. 2.) Plaintiff responded that he wanted to speak with his attorney first. (Dkt. #1 at 5; *see also* Dkt. #14 at 2:16-17 and Ex. 2.)

On May 25, 2004, Plaintiff submitted a kite to JHS stating, "I'm ready to get this tooth pulled." (Dkt. #14 at 2:19-20 and Ex. 3; *see also* Dkt. #1 at 5.) Plaintiff was seen by Dr. Chang on June 1, 2004, at which time he allegedly told Dr. Chang that he was having a hard time eating, his gums were sore and sometimes bled, and if he got another tooth pulled it would only get worse. (Dkt. #1 at 6). Plaintiff contends that Dr. Chang stated, "That's not my problem, do you want the tooth pulled or not?" *Id.* Dr. Chang extracted Plaintiff's tooth #3 on June 1, 2004. (Dkt. #14 at 2-3 and Ex. 4). Plaintiff states that because of the condition of the tooth and the pain it was causing, he had the tooth pulled. (Dkt. #1 at 6.)

On October 26, 2004, Plaintiff submitted another kite to JHS concerning his dental problem. (Dkt. #1 at 7.) The kite described Plaintiff's problem as follows:

> Either the police or the jail lost my upper plate. I only have five upper teeth and will be here at least another year. I can't eat fruit and my gums bleed now and then. I need an upper plate and if not, an explanation in writing why not.

(Dkt. #14, Ex. 5.) On October 27, 2004, Plaintiff was seen by JHS in response to the kite. (Dkt. #6, Harding Decl., Ex. 2 - Admis. #14.) On October 29, 2004, dental progress notes and related transcriptions reflect that Plaintiff was seen by Dr. Chang, who noted the upper and lower teeth that Plaintiff had remaining, including upper tooth #13 that had super-erupted (condition that interferes with bite and may case pain). (Dkt. # 14 at 3, Ex. 6.) In his declaration in support of Defendants' summary judgment motion, Dr. Chang states, "[a]t that time it was decided, given

REPORT AND RECOMMENDATION
Page - 3

1 that Mr. Gallagher's jail stay would likely exceed one year, Mr. Gallagher should receive both an
2 upper and lower partial plate (partial dentures)." (Dkt. #14 at 3:12-14.) In Plaintiff's dental
3 progress notes, Dr. Chang noted a plan for a "full mouth exam, five periapical radiographs,
4 periodontal assessment and next visit: impressions for study models." (Dkt. #14, Ex. 7.) On
5 November 5, 2004, Dr. Chang extracted Plaintiff's tooth #13. (Dkt. #4, Ex. 7.)

6 In a declaration in support of Defendants' motion, defendant Bette Pine, the manager of
7 Jail Health Services for King County, states that she authorized the expenditure for Plaintiff to
8 receive upper and lower partial plates (dentures) in the jail. (Dkt. #15 at 2.) She notes that
9 "[t]he provision of dental prosthesis in the jail is uncommon because most inmates only stay in
10 the jail for a short period of time." *Id.* She states that an exception was made for Mr. Gallagher
11 because he was going to be in the jail awaiting trial for up to a year or longer. *Id.*

12 Dr. Chang's declaration and supporting dental progress notes indicate that he saw
13 Plaintiff again on November 15, 2004, where he noted that the extraction site was healing well,
14 and initial impressions for Plaintiff's partial plates were taken. (Dkt. #14 at 3-4 and Ex. 8.)
15 Thereafter, between December 14, 2004 and March 29, 2005, Plaintiff had additional
16 appointments with Dr. Chang for preparation of additional and final impressions, fittings, etc.
17 (Dkt. #14 at 4, Ex. 8.) On April 11, 2005, Plaintiff received his upper and lower partial plates.
18 (*Id.*; *see also* Dkt. #1 at 7.)

19 <center>III.  DISCUSSION</center>

20 Defendants seek summary judgment and dismissal of Plaintiff's section 1983 action on
21 grounds that: (1) neither Ms. Pine nor Dr. Chang was deliberately indifferent toward Plaintiff's
22 serious medical needs, and (2) Ms. Pine and Dr. Chang are entitled to qualified immunity for
23 their actions.

24 Summary judgment is appropriate where "the pleadings, depositions, answers to
25
26 REPORT AND RECOMMENDATION
Page - 4

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under the governing law. *Id.* The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See id.* at 257. The court is required to draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In response to a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(e). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient. *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

A.   <u>Medical Care</u>

Plaintiff generally alleges that Defendants' deliberate indifference to his serious medical needs constituted a violation of due process and cruel and unusual punishment under the Fourteenth and Eighth Amendments of the United States Constitution. Specifically, Plaintiff argues that Defendants were deliberately indifferent to his serious medical needs because of their denial and delay for eight months before fitting him for partial dental plates, and because it was eleven months after he first made them aware of his need when he received the dental prosthesis. He contends that he has been irreparably injured by the conduct of the defendants.

Because pretrial detainees are not convicted prisoners, their rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual

REPORT AND RECOMMENDATION
Page - 5

punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson*, 74 F.3d at 1187 (quoting *Carnell*, 74 F.3d at 979). This rule also applies to "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (noting the importance of providing dental care to prisoners).

"Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The alleged indifference of the prison officials must rise to the level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Where the prisoner is alleging delay of medical treatment evinces indifference, however, the prisoner must show that the delay led to further injury. *McGucken v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992); *Shapley v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

(1) <u>Bette Pine</u>

In his complaint, Plaintiff's only allegation with respect to JHS Manager Bette Pine is that in August 2004, his criminal defense attorney wrote a letter to Fred Diamondstone at the ACLU asking for help regarding Plaintiff's health issues, and Mr. Diamondstone wrote Bette Pine a letter asking her to address Plaintiff's health issues. (Dkt. #1 at 6). A defendant cannot be held liable under § 1983 solely on the basis of supervisory responsibility or respondeat

REPORT AND RECOMMENDATION
Page - 6

superior. *See Monell v. New York City Dept of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1986) (concluding proper to dismiss where no allegations of knowledge of or participation in alleged violation).

Here, Plaintiff has provided no support for his assertions regarding his defense counsel's alleged correspondence with the ACLU or the ACLU's alleged correspondence with Ms. Pine. Even if these allegations are considered in the light most favorable to Plaintiff, the record reflects that Ms. Pine was, in fact, responsive to Plaintiff's dental issues in that she authorized the expenditures for Plaintiff to receive both upper and lower partial plates. Moreover, Ms. Pine avers in her declaration, and Plaintiff has admitted, that she has never provided direct medical or dental care to Plaintiff. (Dkt. #15 at 2:14-15; Dkt. #16, Ex. 2 - Def.'s First Req. for Admis. at 8.)

In light of these facts, Plaintiff has failed to raise genuine issues of material fact from which a jury could conclude that defendant Pine has liability under § 1983 for deliberate indifference to his medical needs. Accordingly, the undersigned recommends that Defendants' summary judgment motion be granted dismissing Plaintiff's claim against defendant Pine.

(2) <u>Dr. Richard Chang</u>

Plaintiff alleges that when he first saw Dr. Chang in April 2004 and explained that he needed an upper partial dental plate to relieve the problems that he was having with eating and with his gums getting sore and bleeding, Dr. Chang responded "That is not my problem, we only pull teeth here. If anyone asks me, I'll tell them you have enough teeth to eat." (Dkt. #1 at 4.) Likewise, Plaintiff asserts that when he saw Dr. Chang in June 2004 to have a tooth pulled, and

REPORT AND RECOMMENDATION
Page - 7

he again explained his concern that he was having a hard time eating and his gums were sore and sometimes bled, Dr. Chang stated, "That's not my problem, do you want the tooth pulled or not?" *Id.* at 6. Dr. Chang. Defendants contend that there is no evidence that Dr. Chang acted with deliberate indifference because he provided prompt treatment to Plaintiff in response to his kites, and Plaintiff left the jail with a much better dental condition than when he arrived. (Dkt. #13 at 8:12-15.)

While Dr. Chang does not deny making the statements attributed to him by Plaintiff, Dr. Chang asserts that he informed Plaintiff during the initial exam in April 2004 that the jail's clinic does not routinely fabricate prosthesis (dentures). The record contains copies of the dental progress notes from that initial visit that supports Dr. Chang's assertion. (*See* Dkt. #14, Ex. 2.) The Court further notes that Plaintiff has neither alleged that Dr. Chang failed to examine him or provide treatment for the dental discomfort that he was experiencing, nor has Plaintiff produced any evidence that Dr. Chang's initial diagnosis that Plaintiff had "severe localized periodontitis" and "needed to have tooth #3 extracted" was inappropriate. Moreover, any delay in dental treatment that occurred in this case appears to have resulted from: (1) Plaintiff's own request to first consult with his attorney before having the tooth extracted, and, (2) the fact that after tooth #3 was extracted in May 2004, Plaintiff did not submit another dental kite to JHS until October 26, 2004.

Furthermore, as argued by Defendants in their reply, Dr. Chang's decision to treat Plaintiff's concerns with tooth extractions on two occasions rather than fitting him for the partial dentures that he requested, does not itself establish deliberate indifference. *See Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim.) Additionally, Plaintiff has not shown that there was any

REPORT AND RECOMMENDATION
Page - 8

undue delay by Dr. Chang from the time that he took the initial impressions for Plaintiff's partial dentures on November 15, 2004, followed up with several visits for additional and final impressions and fittings, and when Plaintiff received his upper and lower partial plates on April 11, 2005. Accordingly, this Court concludes that Plaintiff has failed to show any genuine issues of material fact from which a jury could conclude that Dr. Chang was deliberately indifferent to his serious medical needs. Thus, it is recommended that Defendants' summary judgment motion be granted on Plaintiff's claims against Dr. Chang.

B.  Qualified Immunity

Defendants also argue that Plaintiffs claims against them must be dismissed because they are entitled to qualified immunity for their actions. Although this argument may have merit, this Court has concluded that there is no support in this case for Plaintiff's claims of constitutional violations by Defendants. Hence, the Court need not address the issue of qualified immunity.

IV.  CONCLUSION

For the foregoing reasons, this Court recommends that Defendants' motion for summary judgment be granted, and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 27th day of February, 2008.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 9